UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DARRELL V. POER, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | 1:18-cv-01622-JMS-MJD |
| *vs.* | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Defendant.* | ) | |

## **ORDER**

Plaintiff Darrell Poer initiated this litigation in May 2018, alleging that medical personnel employed by the Department of Veterans Affairs ("VA") were negligent in failing to timely diagnose him with a spinal cord tumor and cord compression and failing to treat those conditions appropriately while he was a patient at the Richard L. Roudebush Medical Center. Mr. Poer has filed a Motion for Leave to Serve Plaintiff's 2nd Supplemental Expert Witness Disclosure to Include Dr. Marc Thomas's Testimony Concerning Standard of Care, [Filing No. 52], and Defendant the United States of America has filed a Motion for Summary Judgment, [Filing No. 48], and a Motion to Preclude Expert Testimony, [Filing No. 60]. All of those motions are now ripe for the Court's decision.

Because Mr. Poer's Motion for Leave and the United States' Motion to Preclude Expert Testimony both relate to expert testimony upon which Mr. Poer relies in his response to the United States' Motion for Summary Judgment, the Court will address the two expert-related motions first.

# I.

## MOTION FOR LEAVE TO SERVE PLAINTIFF'S 2ND SUPPLEMENTAL EXPERT WITNESS DISCLOSURE [FILING NO. 52]

Mr. Poer has retained Dr. Marc Thomas as his radiology expert, and requests in his Motion for Leave that he be permitted to supplement his disclosure for Dr. Thomas to attach a copy of Dr. Thomas's deposition transcript and to add that Dr. Thomas will – in addition to testifying regarding "MRI imaging conducted August 12, 2016 and March 14, 2017" – testify regarding "the standard of care for radiologists concerning reports." [Filing No. 52 at 1.] Mr. Poer explains that it was "overwhelmingly in plaintiff's counsel's mind that failure to report an observed tumor was below the standard of care, and so he inadvertently omitted to include this specific subject of proposed testimony in the expert witness disclosure." [Filing No. 52 at 2.] He argues that the failure to disclose that Dr. Thomas would testify about the standard of care is harmless because the United States took Dr. Thomas's deposition, the cutoff date for deposing expert witnesses was not until March 4, 2020, and trial is not until July 27, 2020. [Filing No. 52 at 2.] Mr. Poer also points to excerpts from Dr. Thomas's deposition in which Dr. Thomas was questioned about "his opinions concerning the standard of care pertaining to radiology reports, including the report of August 12, 2016, and his opinions about the defendant's radiologist's report." [Filing No. 52 at 2.]

In its response, the United States argues that Mr. Poer filed his Motion for Leave 141 days after expert disclosures were initially due, 108 days after the extended deadline for expert disclosures, 55 days after Dr. Thomas testified at his deposition that his expert report does not contain an opinion regarding the standard of care, and 13 days after the United States filed its Motion for Summary Judgment. [Filing No. 53 at 1.] The United States contends that Dr. Thomas's report does not include his opinion regarding the standard of care, and his testimony at trial must be limited to what he set forth in his report. [Filing No. 53 at 8-9.] It asserts that Mr.

Poer's proposed supplement to Dr. Thomas's report – "the standard of care for radiologists concerning reports" – is not an opinion because it does not state whether Dr. Thomas believes that any of the United States' employees breached or satisfied that standard of care. [Filing No. 53 at 9.] The United States argues that Mr. Poer cannot amend Dr. Thomas's report over 200 days after the deadline has passed, and that Mr. Poer was "expressly reminded" that the report did not contain an opinion regarding the standard of care when Dr. Thomas was deposed. [Filing No. 53 at 10.] It states that Mr. Poer's "'inadvertent' failure to request an opinion on this matter from Dr. Thomas, a failure which persists to this day, could not qualify as either excusable or substantially justified," as required for amendment to be appropriate. [Filing No. 53 at 11.] The United States also argues that Mr. Poer's failure to disclose that he planned to have Dr. Thomas testify regarding whether the standard of care was met is not harmless because "[a]sking an expert witness general questions about his understanding of the standard of care is no substitute for an examination regarding the kind of detailed opinion – including its basis and reasons – that Rule 26 requires a party to disclose." [Filing No. 53 at 11.]

In his reply, Mr. Poer reiterates his argument that allowing him to supplement Dr. Thomas's witness disclosure is harmless because the report already states that the thoracic tumor was visible on the MRI and the United States "must have presumed that failure to identify a visible tumor would be below the standard of care or would at least be an issue at trial." [Filing No. 56 at 2.] Mr. Poer argues that Dr. Thomas's opinion that failing to report the existence of the tumor violated the standard of care is not a surprise to the United States, and that the United States has identified an expert to counter Dr. Thomas's opinion. [Filing No. 56 at 4-5.]

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert's written report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them,"

as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In exercising their discretion to admit or exclude a supplemental report, courts consider: "'(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.'" *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 417 (7th Cir. 2019) (quoting *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012)). A failure to comply with Rule 26 may be substantially justified or harmless when the information has been largely disclosed during discovery. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758-59 (7th Cir. 2004).

Mr. Poer concedes that the proposed supplementation of his expert report is untimely. Accordingly, the Court considers whether allowing supplementation at this stage of the litigation would be substantially justified or is harmless. First, as to prejudice or surprise, the Court considers the context of the proposed supplementation and also Dr. Thomas's deposition testimony. Mr. Poer disclosed Dr. Thomas to testify regarding the August 12, 2016 and March 14, 2017 MRIs. [Filing No. 53-4.] Dr. Thomas stated in his expert report that the thoracic tumor was present in both MRIs. [*See* Filing No. 53-5 at 5.] He also testified consistent with his report. [Filing No. 53-7 at 10-11.] Further, he testified that, while his report did not include his opinion regarding whether VA employees had complied with the applicable standard of care in reviewing Mr. Poer's MRIs, he had provided Mr. Poer's counsel with his opinion in a separate statement a few days after he wrote his report. [Filing No. 53-7 at 12-13.] Significantly, counsel for the United

- 4 -

States asked Dr. Thomas what opinion he had provided in his separate statement to Mr. Poer's counsel:

> Q: Do you recall what opinions you stated in the report you recall providing to [counsel for Mr. Poer] after the date of this March 28th, 2019, report?
>
> A: I prefer that he send the report to you for my exact wording.
>
> Q: But do you remember, as a general matter, what you stated in that report?
>
> A: That I believe that [the VA employees'] interpretation was at variance with the standard of care.

[Filing No. 53-7 at 14-15.] In short, the United States knew from Dr. Thomas's report and deposition that he had determined the tumor was present on Mr. Poer's MRIs, and it knew from his deposition testimony that he believes the VA employees did not meet the applicable standard of care when they failed to identify the tumor on the MRIs. It is also worth noting that, given Dr. Thomas's opinion that the tumor was visible on the MRIs, it is not surprising that he would opine that failing to disclose the existence of the tumor would not meet the applicable standard of care. The Court finds that the United States is not prejudiced, nor should it have been surprised, by Dr. Thomas's opinion regarding the standard of care.

Second, the United States has already been able to cure any prejudice by asking Dr. Thomas at his deposition what opinion he provided to Dr. Poer's counsel regarding compliance with the standard of care. And, significantly, it is clear from the United States' counsel's questioning of Dr. Thomas during his deposition that the United States knew Dr. Thomas had provided Mr. Poer's counsel with an opinion regarding the standard of care. The deposition questioning was aimed at establishing that the opinion existed and was not in the report, and could have instead been tailored toward learning more about the standard of care opinion. *See Uncommon, LLC*, 926 F.3d at 419 ("Rule 37…provides recourse for parties actually harmed by a litigant's noncompliance with

disclosure obligations. It does not safeguard a party's decision to sense an error, seize on it, and then, when it is resolved, claim incurable harm in the face of apparent remedies. Litigation is adversarial, not a game of gotcha").

Third, allowing Mr. Poer to supplement Dr. Thomas's disclosure and Dr. Thomas to testify consistent with his deposition testimony will not disrupt the bench trial in this matter, which is scheduled for July 27, 2020. As discussed above, the United States has already asked Dr. Thomas his opinion regarding whether the standard of care was followed. Additionally, the United States has identified its own expert to counter Dr. Thomas's opinion. The Court will hear testimony from both experts at the bench trial, and will weigh that testimony accordingly.

Finally, the Court finds that the United States has not shown that Mr. Poer's failure to disclose that Dr. Thomas would opine regarding whether the VA employees followed the applicable standard of care was willful in any way or constituted bad faith. Mr. Poer's counsel has explained that he inadvertently omitted the standard of care testimony from the disclosure, and there is no indication that the omission was anything but an oversight.

Based on the four factors set forth by the Seventh Circuit, the Court exercises it discretion and **GRANTS** Mr. Poer's Motion for Leave to Serve Plaintiff's 2nd Supplemental Expert Witness Disclosure to Include Dr. Marc Thomas's Testimony Concerning Standard of Care. [Filing No. 52.] Mr. Poer may serve his Second Supplemental Expert Witness Disclosure on the United States, and may present testimony from Dr. Thomas at trial that is consistent with his deposition testimony. However, in order to provide the United States with a full opportunity to question Dr. Thomas regarding his standard of care opinion, the Court **RE-OPENS DISCOVERY** for the limited purpose of allowing the United States to depose Dr. Thomas (or serve interrogatories) regarding that opinion.

The United States seeks to preclude the testimony of Mr. Poer's two experts – Dr. Thomas and Dr. Carol Anne White – and three of his treating physicians as non-retained expert witnesses – Dr. Albert Lee, Dr. Shaheryar Ansari, and Dr. Matthew Caldwell.

### A. Standard of Review

Federal Rule of Evidence 104 instructs that "[t]he court must decide any preliminary question about whether a witness is qualified…or evidence is admissible." Fed. R. Evid. 104(a). Federal Rule of Evidence 702 provides that expert testimony is admissible if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. A trial judge "must determine at the outset…whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue…. Many factors will bear on the inquiry…." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).

The Court has a "gatekeeping obligation" under Rule 702, and "must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (quoting *Myers v. Ill.*

*Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)).   Put another way, the district court must evaluate: "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony."   *Gopalratnam*, 877 F.3d at 779 (emphasis omitted).   The Seventh Circuit Court of Appeals "give[s] the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable."   *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011).

**B.  Discussion**

The Court considers each witness that the United States seeks to preclude in turn.

*1.  Dr. Thomas*

The United States argues that Dr. Thomas's testimony should be precluded because it will not assist the trier of fact or, alternatively, it should be limited to the contents of his report.  [Filing No. 61 at 6.]  It does not dispute Dr. Thomas's qualifications as an expert, but argues that his opinions "are mere descriptions of radiology images, and do not provide any expert medical evaluation as to any of the issues in the case."  [Filing No. 61 at 7.]  The United States alternatively argues that if Dr. Thomas is permitted to testify, his testimony should be limited to the contents of his report and should not include "any inference he may purport to draw from the image descriptions contained in [the supplemental] disclosure not already set forth within [the report]." [Filing No. 61 at 7-8.]

In response, Mr. Poer argues that the United States was not harmed by his failure to disclose that Dr. Thomas would testify regarding the standard of care.  [Filing No. 62 at 3-4.]

In its reply, the United States reiterates its argument that Dr. Thomas's report does not include his opinion regarding the standard of care, and that his testimony must be limited to the contents of his report. [Filing No. 63 at 2-3.]

The Court has already found in connection with Mr. Poer's Motion for Leave to Supplement that Mr. Poer may testify regarding whether VA employees met the applicable standard of care in this case. While it is true that a party generally cannot supplement an expert witness's report through deposition testimony, *see, e.g., Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008), the circumstances in this case indicate that the United States was not harmed by Dr. Thomas's failure to include his standard of care testimony in his report. The United States questioned Dr. Thomas regarding whether he thought the standard of care was met, and Dr. Thomas provided that opinion. As with Mr. Poer's failure to include the standard of care opinion in his disclosure for Dr. Thomas, the Court, in its discretion, finds that Dr. Thomas's failure to include his standard of care opinion in his report was harmless. Additionally, the Court finds that Dr. Thomas's testimony – which goes beyond merely describing radiology images – will aid the trier of fact. Accordingly, the United States' Motion to Preclude Expert Testimony is **DENIED** as it applies to Dr. Thomas.

### 2. *Dr. White*

Dr. White is board-certified through the American Association of Nurse Life Care Planners, and has been for the past nine years. [Filing No. 60-4 at 3.] She is also board-certified as an adult nurse practitioner and a geriatric nurse practitioner through the American Nurses Credentialing Center, and practices in the acute rehabilitation, long-term care, and outpatient settings as a nurse and nurse practitioner. [Filing No. 60-4 at 3.] Dr. White coordinates care with nurses and other treatment providers, orders medications, orders therapies, consults with

counselors and other specialists, and orders durable medical equipment and home health care for patients. [Filing No. 60-4 at 3.] She reviews all of the patient's records, talks to as many treatment providers as will talk to her, and interviews the patient, then researches costs through methods that were taught to her in her training to become a life care planner. [Filing No. 60-4 at 3.] Dr. White based her plan on a review of Mr. Poer's medical records, conversations with Mr. Poer's counsel, and an in-person interview and assessment of Mr. Poer. [Filing No. 60-4 at 3.] In her report, she sets forth all of the information she reviewed, and then details the services, equipment, and medical care she believes would allow Mr. Poer to have "as good a quality of life as he can, and would have had, had it not been for his injuries." [Filing No. 60-4 at 4-14.] Specifically, Dr. White sets forth what she believes are necessary bathroom aids, diagnostic testing, medical providers, medications, mobility aids, and counseling, and then sets forth the amount of money necessary to carry out the life care plan. [Filing No. 60-4 at 14-19.]

The United States argues that Dr. White's testimony should be barred because it is not based on a reliable scientific methodology and will not assist the trier of fact. [Filing No. 61 at 8-15.] The United States points to the following testimony from Dr. White in arguing that her methodology is flawed:

- The views set forth in her report were "primarily based on her own experience and her independent online research, which chiefly related to online commercial websites and a subscription database of average costs for medical services";

- Two life care planners could create different life care plans based on the same set of facts and both could be correct; and

- She could only recall one instance where there was an error in a life care plan, and it was not in the application of methodology but was a mathematical error.

[Filing No. 61 at 13.] The United States argues that Dr. White's methodology is "subjective and personal in a manner warranting disqualification under *Daubert*." [Filing No. 61 at 13.] The

United States also argues that "Dr. White is generally unable to determine whether the future medical expenses she identifies are attributable to [the] alleged act of negligence, the existence of the tumor, or the effects of the operation to remove the tumor. Only an association with the first of those three alleged causes could result in a damages award against Defendant. Since Dr. White cannot distinguish among them, her testimony is more likely to confuse than clarify the understanding of the trier of fact." [Filing No. 61 at 15.]

In response, Mr. Poer notes that the trial in this matter is not by jury, but rather is a bench trial, and "[t]he trial judge may be relied upon to sort these matters of testimonial competence, with no need to entirely exclude the witness." [Filing No. 62 at 5.]

In its reply, the United States reiterates its arguments as to why Dr. White's testimony should be excluded. [Filing No. 63 at 5-6.]

### a. Whether Dr. White is Qualified

Federal Rule of Evidence 702 allows the opinions of witnesses who have the requisite "knowledge, skill, experience, training, or education." The Court finds that Dr. White is qualified to provide an expert opinion regarding a life plan for Mr. Poer. She is a board-certified Nurse Life Care Planner, adult nurse practitioner, and geriatric nurse practitioner, and she coordinates care with nurses and other treatment providers, orders medications and therapies, consults with counselors and other specialists, and orders durable medical equipment and home health care for patients. She has both the knowledge and experience to create life plans such as the one she has created for Mr. Poer, and the Court finds that she is qualified to testify as an expert in this case.

### b. Whether Dr. White's Methodology is Reliable

The Supreme Court in *Daubert* set forth four factors a court may consider when determining whether an expert witness's methodology is reliable, including: (1) whether the

methodology "can be (and has been) tested"; (2) whether the methodology "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; and (4) whether the methodology is generally accepted. *Daubert*, 509 U.S. at 593-94. These factors are not a "definitive checklist or test," *id.* at 593, and the weight of the factors is dependent on "the particular circumstances of the particular case at issue," *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). The key focus "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

Dr. White's methodology included reviewing Mr. Poer's medical records, consulting with counsel, and interviewing and assessing Mr. Poer. Creating a life plan is not a science in the traditional sense, and the Court finds that the methodology Dr. White used is sound. The United States does not suggest what other actions Dr. White could have taken in order to create a life plan for Mr. Poer, and the Court finds that the steps Dr. White took fit the circumstances of this case and are commensurate with the work that life planners undertake.

### c. Whether Dr. White's Testimony Will Aid the Trier of Fact

Expert testimony must aid the trier of fact by "fit[ting] the issue to which the expert is testifying [and being] tied to the facts of the case." *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 345 (7th Cir. 1995). The United States complains that Dr. White does not provide any opinions regarding negligence or causation, that she relied on "online commercial websites and a subscription database of average costs for medical services," that two life care planners could create different plans that are both correct, and that Dr. White cannot opine whether the future medical expenses she identifies are attributable to the United States' actions.

First, Dr. White is not being offered as an expert on negligence or causation, so her inability to testify as to those issues is irrelevant. Second, the Court finds it perfectly appropriate for Dr. White to consult commercial websites and databases when determining the appropriate cost of medical goods and services. These sources provide the going rate for goods and services, which is information Dr. White needed to create the life plan, and the United States does not suggest another, better source for this information. Third, the fact that a life plan is subjective, and that different planners can come up with different plans, all of which are reasonable, does not automatically make Dr. White's opinion inadmissible. The Court – who will be the trier of fact at the bench trial in this matter – can consider Dr. White's opinion along with the United States' questioning of Dr. White, and any adverse opinions presented by the United States. Finally, the Court will not consider Dr. White's opinion to be that the United States' actions caused the expenses outlined in the life plan. Rather, as Dr. White's report states, her testimony relates to having as good a quality of life as he had before his injuries – and not who caused those injuries.

In sum, the Court finds that Dr. White is qualified to testify as an expert regarding a life care plan for Mr. Poer, that her methodology was sound, and that her report and testimony will aid the trier of fact. The United States' Motion to Preclude is **DENIED** as to Dr. White.

### 3. *Dr. Lee, Dr. Ansari, and Dr. Caldwell*

The United States argues that testimony from Dr. Lee, Dr. Ansari, and Dr. Caldwell should be excluded because even though they are treating physicians, they were required to provide "the same complete report as retained experts where their proposed testimony will exceed the scope of observations made during treatment." [Filing No. 61 at 15.] The United States contends that even if the treating physicians will only testify regarding their observations made during treatment, they still must provide a summary disclosure which includes a summary of the facts and opinions to

which they will testify, and that Mr. Poer did not provide such disclosures for his treating physicians. [Filing No. 61 at 16.]

Mr. Poer argues in response that Dr. Ansari will only testify regarding his direct observations and treatment of Mr. Poer, and that treating physicians who have been identified as non-retained experts must provide the same complete report as retained experts only when their proposed testimony will exceed the scope of observations made during treatment. [Filing No. 62 at 7.] Mr. Poer does not address Dr. Lee or Dr. Caldwell.

In its reply, the United States sets forth the same arguments that it relied upon in its opening brief regarding Dr. Ansari. [Filing No. 63 at 6-9.]

At the outset, the Court finds that by failing to address the United States' arguments, Mr. Poer has waived any argument that he may present expert testimony from Dr. Lee or Dr. Caldwell. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). The United States' Motion to Preclude Expert Testimony is **GRANTED** as to Dr. Lee and Dr. Caldwell, and they may only testify as fact witnesses.

Mr. Poer provided the following disclosure regarding Dr. Ansari: Dr. Ansari "assisted in the surgery and related care of plaintiff in 2017. Not a retained expert. Will testify about his observations, analysis and treatment of plaintiff. No report known other than VA medical records pertaining to plaintiff." [Filing No. 60-2 at 1.] Rule 26 of the Federal Rules of Civil Procedure provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). For a witness to provide factual testimony as well as testimony that requires specialized knowledge – *i.e.*, to be a hybrid fact/expert witness – a party need only disclose "the subject matter on which the witness is expected to present evidence…and…a summary of the facts

and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C); *see also* *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 370 (7th Cir. 2017). As discussed above in connection with the disclosure for Dr. Thomas, failure to provide the information required by Rule 26 may be excused if the failure is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

Mr. Poer clarifies that Dr. Ansari will "be limited to the scope of his observations during his treatment of the plaintiff." [Filing No. 62 at 9.] Testimony regarding causation is closely linked with testimony regarding the treatment that Dr. Ansari provided. At the most, Dr. Ansari is a hybrid fact/expert witness, for whom only a disclosure containing the subject matter of his testimony and a summary of the facts and opinions to which he is expected to testify was required. Fed. R. Civ. P. 26(a)(2)(C). While the disclosure Mr. Poer provided was lacking in that it only generally described that Dr. Ansari would testify regarding his "observations, analysis and treatment" of Mr. Poer, the Court finds that the lack of detail was harmless. Mr. Poer explains in his response that the testimony of Dr. Ansari is limited to the observations he made during the course of his treatment of Mr. Poer. The United States has Mr. Poer's medical records and was aware from the limited disclosure that Dr. Ansari would testify regarding his treatment of Mr. Poer. The United States' Motion to Preclude Expert Testimony is **DENIED** as to Dr. Ansari, but Dr. Ansari may only testify regarding his treatment of Mr. Poer, and observations made during the course of that treatment. To the extent Dr. Ansari testifies regarding causation, that testimony must reflect conclusions he drew during his treatment of Mr. Poer, and not conclusions that he made as part of the litigation.

In sum, the United States' Motion to Preclude Expert Testimony is **GRANTED** as to Dr. Lee and Dr. Caldwell, who may testify as fact witnesses only, and **DENIED** as to Dr. Ansari, who

may testify as outlined above. Additionally, the Court **RE-OPENS DISCOVERY** so that the United States may question Dr. Ansari (either through a deposition or interrogatories) in order to ensure compliance with this Order – *i.e.*, in order to determine whether Dr. Ansari formed his opinions regarding causation during the course of his treatment of Mr. Poer.

### III.
### MOTION FOR SUMMARY JUDGMENT

**A. Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the granting of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

**B. Statement of Facts**

The following factual background is set forth pursuant to the standards detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

On August 12, 2016, the VA performed an MRI of Mr. Poer's lumbar spine. [Filing No. 48-2 at 11-12.] Dr. Matthew Crosby, a VA employee, reviewed the MRI and concluded that it showed "Multilevel degenerative changes of the lumbar spine… L5 pars defects. No

spondylolisthesis." [Filing No. 48-2 at 12.] On March 6, 2017, the VA performed another MRI of Mr. Poer's lumbar spine, which was reviewed by Dr. John Duc Nguyen, a VA employee. [Filing No. 48-2 at 8-10.] Dr. Nguyen concluded that the MRI showed "Multilevel multifactorial lumbar spine degenerative changes, with progression at a few levels as compared to the 8/12/2016 exam." [Filing No. 48-2 at 10.]

On March 14, 2017, Nurse Practitioner Stephen Douglas, a VA employee, examined Mr. Poer who was complaining of bilateral flank and abdominal pain, and numbness and weakness in his legs. [Filing No. 48-2 at 3-6.] Mr. Poer reported that his symptoms had started in August with flank pain and numbness in his feet, but that his pain had gotten worse in the last month to the point where he could no longer walk. [Filing No. 48-2 at 3.] Nurse Practitioner Douglas reviewed the August 12, 2016 MRI and concluded that it showed "[a] T11 Mass, which is not fully evaluated on lumbar MRI, but appear[s] to be intradural extramedullay [sic] mass with cord compression." [Filing No. 48-2 at 6.] Nurse Practitioner Douglas requested an MRI of Mr. Poer's thoracic spine with and without contrast, and that MRI resulted in a finding that Mr. Poer had "[i]ntradural extramedullary approximate 1.2 cm enhancing lesion at the level of T11 vertebral body. Anterolateral spinal cord displacement and severe cord compression." [Filing No. 48-2 at 6-7.] In sum, the last MRI revealed that there was a 1.2 centimeter tumor at Mr. Poer's T11 vertebrae, which was pressing on Mr. Poer's spinal cord. [Filing No. 48-2 at 7.]

Mr. Poer underwent surgery "for a T11 laminectomy w/ excision of intradural, extrameduallary [sic] mass w/ intraoperative EMG and SSEP" on March 15, 2017. On May 30, 2018, he initiated this litigation alleging that the VA was negligent in failing to properly diagnose and treat him. [Filing No. 1.]

### C. Discussion

In support of its Motion for Summary Judgment, the United States argues that Dr. Thomas's report does not discuss the standard of care nor the cause of Mr. Poer's injuries, and that Dr. White's report is best characterized as a "damages report." [Filing No. 49 at 14-16.] The United States argues that Mr. Poer's lack of evidence relating to negligence and causation is fatal to Mr. Poer's claim. [Filing No. 49 at 14-17.] The United States also notes that it has introduced two expert opinions – Dr. Jon Davidson, who opines that the VA's review and evaluation of the August 12, 2016 MRI satisfied the standard of care, and Dr. Andrew Zelby, who opines that Mr. Poer's injuries are likely not the result of the alleged delay in diagnosis of his tumor but rather resulted from the surgery to remove the tumor. [Filing No. 49 at 16-17.]

In response, Mr. Poer argues that his expert evidence supports a finding that "[the] radiologist breached his duty of care on August 12, 2016 by failing to observe and report a lesion or tumor at the lower thoracic level; [and] that the plaintiff was harmed by that breach because for seven months his medical care providers relied on that report and did not consider the possibility of nerve involvement, allowing the tumor to crush [his] spinal cord." [Filing No. 55 at 15.] Mr. Poer also argues that expert testimony may not even be needed, because "[f]ailing to see an obvious spinal lesion on an MRI or failing to report an obvious spinal lesion" is "so obviously substandard that one need not possess medical expertise to recognize the breach." [Filing No. 55 at 15-16] (citation and quotation omitted).] Mr. Poer also objects to the reports of Dr. Davidson and Dr. Zelby, asserting that they are unverified. [Filing No. 55 at 17.]

In its reply, the United States sets forth many of the same arguments it advanced in support of its Motion to Preclude Expert Testimony, arguing that Dr. Thomas cannot provide his opinion regarding the standard of care and that Dr. Ansari may not testify regarding causation. [Filing No.

57 at 2-11.] The United States also contends that the Court may consider its expert reports in deciding the Motion for Summary Judgment. [Filing No. 57 at 11-12.]

Mr. Poer filed a surreply, in which he relies upon the same arguments he set forth in opposition to the United States' Motion to Preclude Expert Testimony. [Filing No. 58 at 1-9.]

In order to succeed on his negligence claim, a plaintiff must establish: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty and (3) injury to the plaintiff proximately caused by the defendant's breach." *Hayden v. Franciscan Alliance, Inc.*, 131 N.E.3d 685, 693 (Ind. Ct. App. 2019).[1] The United States does not dispute that it owed a duty of care to Mr. Poer. As to the breach and injury elements of Mr. Poer's claim, having found that Mr. Poer may rely upon Dr. Thomas to provide testimony regarding his opinion as to a breach of the standard of care and upon Dr. Ansari to provide an opinion regarding causation as to Mr. Poer's injuries so long as Dr. Ansari formed his opinion in the course of treating Dr. Poer, the Court also finds that Mr. Poer has presented sufficient evidence to create a genuine issue of fact as to the issues of the standard of care and causation. The testimony of Mr. Poer's experts versus the United States' experts creates classic genuine issues of fact, for which summary judgment is inappropriate. The United States' Motion for Summary Judgment, [Filing No. 48], is **DENIED**.

---

[1] Both parties rely upon Indiana law in their briefs. [*See, e.g.*, Filing No. 49 at 11; Filing No. 55 at 14.] Absent a disagreement, the Court will apply Indiana law. *Mass. Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1120 (7th Cir. 1998); *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits…. Courts do not worry about conflict of laws unless the parties disagree on which state's law applies. We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them)").

## IV.
### CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS** Mr. Poer's Motion for Leave to Serve Plaintiff's 2nd Supplemental Expert Witness Disclosure to Include Dr. Marc Thomas's Testimony Concerning Standard of Care, [52];

- **GRANTS IN PART** and **DENIES IN PART** the United States' Motion to Preclude Expert Testimony, [60], such that Dr. Lee and Dr. Caldwell may only testify as fact witnesses, but Dr. Ansari may testify as a hybrid fact/expert witness as outlined above;

- **DENIES** the United States' Motion for Summary Judgment, [48]; and

- **ORDERS** that **DISCOVERY IS RE-OPENED** until **June 30, 2020**, to the limited extent that the United States may depose Dr. Thomas and Dr. Ansari, or serve interrogatories, consistent with this Order if it so chooses.

The Court notes that, while it has found that Mr. Poer's failure to disclose that Dr. Thomas would provide an opinion regarding the standard of care and his failure to describe in more detail the testimony of Dr. Ansari was harmless, the need to litigate these issues would have been avoided had Mr. Poer's counsel ensured compliance with the letter of Rule 26 in the first place. The Court is disturbed by this lack of compliance, and expects and requires counsel to strictly comply with all rules and court orders in the future including at trial.

The Court requests that the Magistrate Judge confer with the parties regarding a possible resolution of this matter in advance of the July 27, 2020 bench trial.

Date: 3/25/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**